## J. A. CARROLL *v*. THE STATE.

ACCOMPLICE TESTIMONY. — The only evidence connecting the accused with the burning of a house was that of a woman and her son, who concurred in testifying that at midnight, and just before the fire, the accused came to their house and woke up the family, and told them he was going to burn the house and intended to set it on fire at the corner where it was fired; that he had the matches in his pocket, and they would see the fire directly if they would look. They further disclosed that another son had fled the state for fear he would be accused of the crime, and that none of the family had divulged their knowledge until after the arrest of the accused. The owner of the house proved that he had a difficulty with the refugee prior to the fire. *Held*, that this state of the evidence made it incumbent on the court, whether asked or not, to give in charge to the jury the provisions of the Code which inhibit a conviction on uncorroborated evidence of accomplices, and which require that the corroborative evidence shall tend to connect the accused with the offense charged.

APPEAL from the District Court of Cooke. Tried below before the Hon. J. A. CARROLL.

The opinion states all facts relevant to the ruling.

*Davis & Garnett*, for the appellant.

*George McCormick*, Assistant Attorney General, for the State.

Ector, P. J.   The appellant was tried upon an indictment charging him with burning an out-house, the same being the corn-crib and property of D. H. Sanders.   At the July term, 1877, of the District Court of Cooke County, he was convicted, and his punishment assessed at five years' confinement in the state penitentiary.

We do not propose to notice all of the errors assigned. Counsel for appellant, in their brief, complain that the court did not fully define the terms "house," "out-house," and "dwelling-house," in his charge to the jury, in the language of the statute, as each of them had a peculiar statutory meaning in the chapter of our Penal Code in reference to arson.   See Pasc. Dig., arts. 2309–2312.

They further insist that the state failed to prove that the corn-crib which was burned was an "out-house" in the sense in which the terms "out-house" are used in the indictment, as there was not evidence sufficient to show that the corn-crib was "adjacent to, communicating with, or on the same premises with a dwelling-house" at the time it was burned.

Without passing upon the legal sufficiency of the charge of the court, or the evidence submitted to the jury, on the above points referred to, as the judgment of the District Court in this cause will be reversed on another ground, we deem it not amiss to say that the counsel for the prosecution will have an opportunity to meet these objections raised by appellant's counsel.

The third error assigned by the appellant is that "the court erred in not instructing the jury in reference to the evidence of accomplices, in regard to Mrs. and James Lamb, state's witnesses, vide bill of exceptions."

In cases of felony it is the duty of the judge, on the trial, whether asked or not, to distinctly set forth the law applicable to the case as made by the facts proved.   Pasc. Dig., art. 3059.   We believe that the jury should have been

instructed in this case that "a conviction cannot be had upon the testimony of an accomplice, unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense." Pasc. Dig., art. 3118.

The attention of the court was called to the necessity of such a charge, for it appears from the record that counsel for appellant excepted, on the trial, to the charge given by the court to the jury, because it did not "state the law in regard to the evidence of accomplices," as is shown by a bill of exceptions.

The appellant was convicted on the testimony of Mrs. Lamb and her son James. Leaving out their testimony, there is not a particle of evidence in the statement of facts tending to connect the appellant with the commission of the offense charged in the indictment.

Mrs. Lamb testified that — "I was living on Tom Sanders' place, about one-half mile from D. M. Sanders'. About midnight, on the night when the crib was burned, defendant came to my house. Myself and my sons Lilburn and James were at home, but no one else. Defendant had no business there that he made known. It was a dark night. We had been to bed about three hours, and we all got up and made a little light in the fire-place. Defendant stayed about an hour. He told us that he intended to burn Sanders' crib that night. * * * Defendant said that he intended to burn the crib; that he had the matches in his pocket-book; that he intended to go to the old spring and pull off his shoes, and set the crib under the north-east corner, next to the stable, and burn up the crib and the horse too, just as sure as there was a hell in Georgia; and said, if we would look, we would see the fire in a few minutes. We did not look to see the fire, but went back to bed as soon as defendant left. * * * I did not tell anything

about having seen the defendant till after he was arrested. * * * Lilburn had been in Arkansas since last September; he left for fear he would be arrested for burning Sanders' crib.''

James Lamb, a witness for the state, told the same story as to appellant's coming to his mother's house on the night the corn-crib of Sanders was burned, and as to what he said; in fact, his testimony agreed with his mother's in every particular.

S. M. Embry, the sheriff of Cooke County, testified as follows: "A few days after the fire I arrested defendant where he was living, in Grayson County, Texas. After I had brought defendant back to Cooke County, I saw Mrs. Lamb at Sanders' well, and told her that the fire was about to take another wiggle off another way; and Mrs. Lamb then told me what she knew about the matter. Prior to this time none of the Lambs had told anything about it to me. At the well, before I said anything to Mrs. Lamb, she asked me where defendant was. I told her that he was in jail. But I told her the fire was about to wiggle off another way. It was then that she told me what she knew about the fire.''

The witness D. M. Sanders testified as follows: " Defendant was living on my place in the early part of the year, but, owing to some trouble between us, had left the place about six weeks prior to the burning, and was staying in Grayson County, about fifteen miles from my place, and had not been on my place since he left, that I am aware of. The state of feeling between me and the defendant was not good at the time of the burning. None of the Lambs told me anything about the burning till after the defendant was arrested. Most of the neighbors came to help me fight fire on the night of the burning; but none of the Lambs came that night. * * * The crib was fired at the north-east corner, next to the stable. * * * A few weeks prior

to the burning there had been a difficulty between me and Lilburn Lamb, but it had been settled prior to the burning.''

It is out of the ordinary course of things that a rational man would go out at midnight, wake up innocent witnesses, and tell them that he was about to commit so diabolical a crime. The portion of the evidence which we have copied shows that Lilburn Lamb, though no one accused him, has fled to Arkansas to avoid arrest for burning the crib of Sanders; that Mrs. Lamb and her son James told no one that they had seen appellant, and what he said to them, although she had ample opportunity to do so, until after appellant had been arrested, and not then until she was advised that other persons were suspected of having a hand in the burning.

Without deciding whether or not the evidence, in the shape in which it comes, is sufficient to sustain the verdict and judgment in the case at bar, we do think that appellant should have another trial, especially when the liberty of a citizen is staked upon the issue.

The judgment of the District Court is reversed and the cause remanded.

*Reversed and remanded.*